UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
LOUIS ROMEO, CHRISTOPHER MOTZ and DEBORAH
ARPINO, individually and on behalf of all others similarly
situated,

                    Plaintiffs,

       -against-

FMA ALLIANCE, LTD.,

                    Defendant.
--------------------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
15-cv-6524 (ADS)(ARL)

**APPEARANCES:**

**Barshay Sanders, PLLC**
*Attorneys for the Plaintiffs*
100 Garden City Plaza, Suite 500
Garden City, NY 11530
       By:   David M. Barshay, Esq.
              Craig B. Sanders, Esq., Of Counsel

**Sessions Fishman Nathan & Israel LLC**
*Attorneys for the Defendant*
3 Cross Creek Drive
Flemington, NJ 08822
       By:   Aaron R. Easley, Esq., Of Counsel

**SPATT, District Judge:**

     On November 13, 2015, the Plaintiffs Louis Romeo ("Romeo"), Christopher Motz ("Motz"),

and Deborah Arpino ("Arpino," together with Romeo and Motz, the "Plaintiffs") commenced this

putative class action against the Defendant FMA Alliance, Ltd. ("FMA" or the "Defendant"), alleging

that certain debt collection activities by FMA violated the federal Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*

     On January 15, 2016, the Defendant filed a motion under Federal Rule of Civil Procedure

("Fed. R. Civ. P.") 12(b)(1), seeking to partially dismiss the complaint for lack of subject matter

jurisdiction on the ground that Romeo and Motz lack standing.  The Defendant also sought to

dismiss the complaint in its entirety on the alternative ground that the equitable doctrine of judicial

estoppel bars the Plaintiffs' claims.  Finally, contending that the Plaintiffs commenced this action in

bad faith for the primary purpose of harassing FMA, the Defendant seeks an award of attorneys'

fees and costs under section 1692k of the FDCPA.

For the reasons that follow, the Defendant's motion to dismiss is granted in part and denied

in part.

## I.      Background

Beginning in January 2015, the Defendant, a debt collector, sent letters (the "FMA Collection

Letters") to a class of at least 35 individuals, including the Plaintiffs, seeking to collect alleged

consumer debts.  Although the Plaintiffs allege that these letters violated the provisions of the

FDCPA in numerous respects, the present motion does not involve the legal sufficiency of the FMA

Collection Letters.   Rather, the Defendant contends that, before the Court reaches the merits of the

Plaintiffs' substantive allegations, it must dismiss this case due to certain intervening events that

transpired during the Plaintiffs' personal bankruptcy proceedings.

The following salient facts are drawn from the complaint and the documentary evidence

submitted in connection with the motion.   See Marakova v. United States, 201 F.3d 110, 113

(2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), a district court . . . may refer to evidence outside the pleadings").

### A.      The Facts Relating to the Plaintiff Louis Romeo

On or about January 14, 2015, Romeo received the allegedly objectionable FMA Collection

Letter.  See Compl. ¶ 13.

On or about May 13, 2015, he filed for Chapter 7 bankruptcy in the Eastern District of New

York.  See Jan. 15, 2016 Declaration of Aaron R. Easley, Esq. ("Easley Decl."), Exhibits "A" & "B."  In

the standard voluntary petition for Chapter 7 relief, Romeo was required to complete certain

financial disclosures, one of which is entitled "Schedule B – Personal Property" ("Schedule B"), and

directs debtors to "list all personal property . . . of whatever kind," including "contingent and

unliquidated claims of every nature." See Easley Decl., Ex. "B," at Sch. B. Romeo indicated that he possessed no such property interests at the time of the filing. See id.

Another schedule, entitled "Schedule C – Property Claimed as Exempt" ("Schedule C"), directs debtors to describe and estimate the value of any property that he or she believes is exempt from the bankruptcy estate. See id., at Sch. C. Romeo did not identify a potential lawsuit against FMA, or any other party, among his exempt property. See id.

Nevertheless, on or about June 13, 2015, Romeo commenced an action in the United States District Court for the Southern District of Texas, entitled Louis Romeo v. FMA Alliance, Ltd. (the "Texas Action"), alleging violations of the FDCPA and section 349 of the New York General Business Law ("NYGBL"), based on the same FMA Collection Letters that are at issue in this case. See Easley Decl., Ex. "C."

Also on or about June 13, 2015, Romeo commenced a second action in this District, which was assigned to this Court, entitled Louis Romeo v. Northland Group, Inc. Case No. 15-cv-3439 (ADS)(ARL) (the "Northland Action"). See Easley Decl., Ex. E"; see also Case No. 15-cv-3439, Docket Entry [1]. In that case, Romeo also alleged violations of the FDCPA and NYGBL, based on allegedly improper collection letters sent by Northland Group, Inc. See generally id. The Court notes that the same law firm that represents Romeo in this case, namely, Barshay Sanders PLLC, also represented Romeo in the Northland Action. See Case No. 15-cv-3439, Docket Entry [4].

On June 23, 2015, with the Texas and Northland Actions undisclosed, the trustee in Romeo's Chapter 7 proceeding filed a "report of no distribution," attesting to the bankruptcy court that, after making a diligent inquiry into Romeo's financial affairs, as reported in his schedules, he possessed no distributable assets. See Easley Decl., Ex. "A."

On or about July 5, 2015, the complaint in the Texas Action was amended by, among other things, adding Christopher Motz as a plaintiff. See Easley Decl., Ex. "D."

On July 17, 2015, counsel for the Plaintiffs apparently learned that Romeo had failed to identify the Texas Action as an asset on Schedule B of his bankruptcy petition.  See Feb. 28, 2016 Declaration of Craig B. Sanders, Esq. ("Sanders Decl.") ¶ 3.  Thus, on July 21, 2015, prior to issue being joined in that case, Romeo and Motz voluntarily dismissed the Texas Action without prejudice to refiling.  See id. ¶ 4.

In his affidavit, Mr. Sanders makes no reference to the Northland Action, in which his law firm was also counsel, or whether he learned at any time that the Northland Action also had not been disclosed on Romeo's bankruptcy petition.  The Court's records indicate that, unlike the Texas Action, the Northland Action was not voluntarily discontinued.

On July 22, 2015, Romeo filed amended Schedules B and C in the Chapter 7 proceeding.  See Easley Decl., Ex. "F."  On the portion of Schedule B where he was asked to list any "contingent and unliquidated claims," Romeo wrote, "Possible Fair Debt Collection Claim."  Id., at Am. Sch. B.  On the portion of Schedule C where he was asked to identify exempt property, Romeo again wrote "Possible Fair Debt Collection Claim," and assigned a value of $1,000.  See id., at Am. Sch. C.

The Plaintiffs assert, and the Defendant does not deny, that because FMA was a creditor in Romeo's Chapter 7 proceeding, it was served with copies of the amended schedules.  See Pl. Memo of Law at 4-5.  The Court notes that the official docket in Romeo's bankruptcy case indicates that an affidavit of service was filed on July 22, 2015, although a copy of that document was not provided. See Easley Decl., Ex. "A."  In any event, it is undisputed that FMA did not object to Romeo's amended schedules in the bankruptcy court.

On or about August 26, 2015, the bankruptcy court granted Romeo a full discharge and closed his Chapter 7 proceeding.  See Easley Decl., Ex. "A."

On November 13, 2015, he, along with the other individual Plaintiffs, commenced this action.

On May 13, 2016, while this action was pending, Romeo notified the Court that the Northland Action had settled.  See Case No. 15-cv-3439, Docket Entry [19].  That matter was closed for administrative purposes the same day.

**B.      The Facts Relating to the Plaintiff Christopher Motz**

On March 10, 2015, Motz also received an allegedly objectionable FMA Collection Letter. See Compl. ¶ 14.

On or about May 30, 2015, he also filed for Chapter 7 bankruptcy in this District.  See Easley Decl., Ex. "H" & "I."  Like Romeo, Motz indicated on Schedule B that he possessed no distributable personal property, including contingent or unliquidated claims.  See Easley Decl., Ex. "I," at Sch. B. Likewise, he did not identify any interest in a potential lawsuit among his exempt property.  See id., at Sch. C.

As noted above, on July 5, 2015, Motz joined Romeo as a plaintiff in the then-pending Texas Action, which was based on the FMA Collection Letters.  See Easley Decl., Ex. "D."

On July 14, 2015, with the Texas Action still undisclosed, the trustee in Motz's bankruptcy case filed a "report of no distribution," attesting to the bankruptcy court that, after making an inquiry into Motz's financial affairs, he, too, possessed no distributable assets.  See Easley Decl., Ex. "H."

As noted above, on July 17, 2015, Motz's attorneys apparently learned that he had failed to disclose the Texas Action as an asset on his Chapter 7 petition, and on July 21, 2015, voluntarily dismissed that lawsuit without prejudice.  See Sanders Decl. ¶¶ 3-4.

On or about July 22, 2015, Motz filed amended Schedules B and C.  See Easley Decl., Ex. "J." Similar to Romeo, he amended Schedule B to include a "Possible Fair Debt Collection Claim" among his contingent and unliquidated claims.  Id., at Am. Sch. B.  He also amended Schedule C to claim a $1,000 exemption for the same cause of action.  See id., at Am. Sch. C.

Again, the Plaintiffs assert, and the Defendant does not deny, that FMA was served with the amended schedules, but did not object to them.  <u>See</u> Pl. Memo of Law at 4-5.  Motz's bankruptcy docket indicates that an affidavit of service was filed on July 22, 2015, but a copy of that document was not provided to the Court.  <u>See</u> Easley Decl., Ex. "H."

On or about September 10, 2015, the bankruptcy court granted Motz a full discharge and closed his Chapter 7 proceeding.  <u>See</u> Easley Decl., Ex. "H."

On November 13, 2015, he, along with the other individual Plaintiffs, commenced this action.

**C.     The Facts Relating to the Plaintiff Deborah Arpino**

On June 29, 2015, Arpino also received an allegedly objectionable FMA Collection Letter. <u>See</u> Compl. ¶ 15.

On or about August 5, 2015, she filed for Chapter 13 bankruptcy in the Eastern District of New York.  <u>See</u> Easley Decl., Ex. "K" & "L."  Like the petition for Chapter 7 relief, the standard Chapter 13 petition contains a Schedule B for debtors to identify their assets, and a Schedule C to claim authorized exemptions.  Similar to Romeo and Motz, Arpino indicated that she possessed no distributable personal property at the time of filing, including contingent or unliquidated claims. <u>See</u> Easley Decl., Ex. "L," at Sch. B.  She also did not identify an interest in a potential lawsuit as part of her exempt property.  <u>See id.</u>, at Sch. C.

Nevertheless, approximately three weeks later, on August 26, 2015, Arpino commenced an action in the United States District Court for the District of Colorado, entitled <u>Arpino v. Professional Bureau of Collections of Maryland, Inc.</u>, alleging violations of the FDCPA and the NYGBL.  <u>See</u> Easley Decl., Ex. "P."

On or about September 1, 2015, Arpino filed an amended Schedule B, which included a $1,000 "Possible Fair Debt Collection Claim" among her distributable assets.  <u>See</u> Easley Decl., Ex. "M," at Am. Sch. B.

In the week between September 8, 2015 and September 15, 2015, Arpino commenced three more actions against three separate debt collector-defendants in Pennyslvania, Illinois, and the Eastern District of New York.

On November 13, 2015, she, along with the other individual Plaintiffs, commenced this action.

On or about December 21, 2015, the bankruptcy court confirmed Arpino's Chapter 13 plan. See Easley Decl., Ex. "K."  However, apparently, at no point between September 1, 2015, when she amended her schedules to disclose a $1,000 possible FDCPA claim, and December 21, 2015, when she emerged from bankruptcy, did Arpino further amend her petition or otherwise disclose the four additional lawsuits she filed.

## II.        Discussion

### A.        Subject Matter Jurisdiction

First, the Defendant moves under Fed. R. Civ. P. 12(b)(1) to dismiss the claims asserted by Romeo and Motz for lack of subject matter jurisdiction.  The Court notes that FMA did not similarly challenge Arpino's standing.

In any event, the Defendant argues that because Romeo and Motz failed to disclose their putative FDCPA claims against FMA on their bankruptcy petitions, those claims now belong to the respective bankruptcy estates, which, through their trustees, are the only parties with standing to enforce them.

Although the Defendant acknowledges that both Romeo and Motz amended their respective Schedules B and C to include a potential FDCPA claim, FMA nevertheless argues that the form of the eventual disclosure – namely, "Possible Fair Debt Collection Claim" – was insufficient to provide the bankruptcy trustees with proper notice of the claims, and to make an informed decision about whether to pursue or abandon them.

**1.     The  Standard of Review**

" 'A motion to dismiss for lack of subject-matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim.' "   Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014) (Spatt, J.) (quoting Ali v. NYC DOT, Nos. 14-cv-312  & 14-cv-313, 2014 U.S. Dist. LEXIS 158331, at *2 (E.D.N.Y. Nov. 4, 2014)).  Although this is the Defendant's motion, the burden is nevertheless on the Plaintiffs, as the parties seeking to invoke the Court's jurisdiction, to establish that they have standing, and by extension, that subject matter jurisdiction exists.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  As indicated above, in resolving this jurisdictional question, the Court may refer to evidence outside the pleadings and weigh the evidence in the record.  See Ali, 2014 U.S. Dist. LEXIS 158331, at *3.

**2.     The Applicable Legal Principles**

**a.     The Duty of Disclosure in Bankruptcy Proceedings**

In general, "[t]he price of a discharge in bankruptcy is high, and the disclosure requirements of the Bankruptcy Code and Rules are onerous indeed."   In re Arana, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011).  In this regard, pursuant to 11 U.S.C. § 521(a)(1), a debtor seeking the benefits of bankruptcy is under a duty to disclose in the relevant schedules all of his or her interests and property rights.  See In re Lowery, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008); see also Arana, 456 B.R. at 169 ("An individual debtor must 'disclose *all* his interests at the commencement of a case' " (emphasis in original) (quoting Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008))).

Relevant here, this duty includes an obligation to disclose any inchoate legal claims possessed by the debtor.  See Tilley v. Anixter Inc., 332 B.R. 501, 508-09 (D. Conn. 2005) (noting that "[a] debtor filing for bankruptcy has a duty to list all of his or her assets, including legal claims, on the appropriate schedule of the bankruptcy petition") (citations omitted).

This obligation "is a continuing one," which "does not end with the filing of the bankruptcy petition." Lowery, 398 B.R. at 515.  As in this case, "a debtor may amend '[a] voluntary petition, list, schedule, or statement . . . as a matter of course before the case is closed.' " Arana, 456 B.R. at 169 (quoting Fed. R. Bankr. P. 1009(a)).

In all cases, "the debtor has a duty to prepare [the] schedules carefully, completely, and accurately." In re Mohring, 142 B.R. 389, 394 (Bankr. E.D. Ca. 1992), aff'd, 153 B.R. 601 (B.A.P. 9th Cir. 1993), aff'd, 24 F.3d 247 (9th Cir. 1994).  To be sure, "[f]ull and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system." Lowery, 398 B.R. at 515.  "Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized." Id.

### b.    The Interrelationship Between Disclosure and Standing

Central to this case is the proposition that a debtor's compliance with the disclosure requirement determines his or her standing to prosecute a claim after emerging from bankruptcy.

In particular, "[w]hen a bankruptcy petition is filed, an estate is created," which "encompasses 'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative.' " Arana, 456 B.R. at 169 (quoting Chartschlaa, 538 F.3d at 122).  At that point, only the assigned bankruptcy trustee "may administer property of the estate, including bringing actions on behalf of the estate." Id. at 169-70 (citing 11 U.S.C. §§ 323 & 704); see also id. at 170 ("[D]uring the pendency of a bankruptcy case, the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor" (citations omitted)).

When a potential legal claim is disclosed by a debtor on his or her bankruptcy petition, "the trustee may seek to be substituted as the plaintiff and pursue the claim"; "allow [the] debtor to pursue [the] action on behalf of the estate"; or decline to pursue the claim.  Id. (citations omitted). In all scenarios, by disclosing the potential cause of action, the debtor allows the trustee to

9

" 'investigate whether [it] has value, and then prosecute it, settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share of the proceeds.' " Id. (quoting In re Lopez, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002)); see in re Costello, 255 B.R. 110, 113 (Bankr. E.D.N.Y. 2000) ("The disclosure requirement allows the trustee and the creditors to determine whether the assets, including causes of action, should be pursued on the creditors' behalf").  Then, "when the bankruptcy case is closed, [any] 'correctly scheduled property not otherwise administered by the trustee is abandoned to the debtor.' " Arana, 456 B.R. at 170 (quoting Lopez, 283 B.R. at 31).  However, "[i]t is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment . . ." Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995).

By contrast, "[w]hen an action is *not* disclosed by the debtor, it remains property of the bankruptcy estate even after the case is closed – indeed, unless it is administered or abandoned by the trustee, the action remains property of the estate 'forever.' " Arana, 456 B.R. at 170 (quoting Lopez, 238 B.R. at 28) (emphasis supplied); see id. at 169-70 (noting that "the debtor's rights to estate assets, including prepetition claims, 'are extinguished unless the asset is abandoned back to the debtor [by the trustee]' " (quoting Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004))); Kunica v. St. Jean Fin., Inc.. 233 B.R. 46, 53 (S.D.N.Y. 1999) (noting that "property that is not formally scheduled is not abandoned and therefore remains part of the estate" (internal citation and quotation marks omitted)); see also United States ex rel. Spicer v. Westbrook, 751 F.3d 354, 362 (5th Cir. 2014) ("The bankruptcy trustee . . . has exclusive standing to assert undisclosed claims that fall within the bankruptcy estate" (citation omitted)).

### c.   Determining the Factual Specificity Required on a Bankruptcy Schedule

"[F]ew courts have addressed the level of specificity with which debtors must describe assets in order to comply with 11 U.S.C. § 521[a](1)." Tilley, 332 B.R. at 509.  As one district court noted, "[t]here are . . . no bright-line rules for how much itemization and specificity is required" – rather, "[w]hat is required is reasonable particularization under the circumstances." Mohring, 142

B.R. at 395.  In this regard, " 'it would be silly to require a debtor to itemize every dish and fork,' "

but " 'every bankrupt must do enough itemizing to enable the trustee to determine whether to

investigate further.' "  Id. (quoting Payne v. Wood, 775 F.2d 202, 205-07 (7th Cir. 1985)).

> Recently, a district court in this District (Irizarry, J.) noted that:
>
> [A] review of authority from outside of this circuit and from courts of concurrent
> jurisdiction inside this circuit reveals that courts typically look at whether the schedule
> gives the trustee enough information about the claim so he or she can decide if the claim is
> worth pursuing.  See In re Furlong, 660 F.3d 81, 87 (1st Cir. 2011) ("As investigation is part
> of the Trustee's duties under § 704, a debtor is required only to do enough itemizing to
> enable the trustee to determine whether to investigate further." (citations and internal
> quotation marks omitted)); Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001) (Schedule
> was adequate where "listing was not so defective that it would forestall a proper
> investigation of the asset."); Payne v. Wood, 775 F.2d 202, 206 (7th Cir. 1985) (Purpose of
> schedule of assets "is to allow the trustee to decide which claims to challenge."); Tilley, 332
> B.R. at 509 ("[I]n order for a bankruptcy trustee to accurately determine how much
> property an estate has available for distribution to creditors, the schedule of assets must
> put him or her on notice of all potential assets.").

Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482, 489 (E.D.N.Y. 2013).

Several decisions cited by the parties help to illustrate this standard.  For example, in In re

Lake, 49 B.R. 715 (Bankr. S.D. Fla. 1985), the debtor commenced a civil action approximately three

months before filing for Chapter 7 relief.  However, the relevant schedule to his bankruptcy petition

stated only, "Intend to file lawsuit in Miami regarding my car that was stolen July 1981 by Auto

Recovery."  Id. at 716.  Unaware that a civil lawsuit was actually pending at the time of the filing, the

bankruptcy trustee advised the court that the debtor possessed no distributable assets and the

matter was closed.  See id.  However, when a civil jury later returned a substantial verdict for the

debtor, the bankruptcy court reopened the Chapter 7 case and appointed a successor trustee to

recover the proceeds on behalf of the estate.  See id.  In opposition, the debtor argued that the civil

claim had reverted back to him because, during the original Chapter 7 proceeding, the trustee failed

to pursue it.  See id.

The court disagreed, finding that "the lawsuit and the claim were concealed from the trustee

by the cryptic and deceptive references contained in the . . . schedule of property."  Id. at 717.  In

reaching this conclusion, the court noted that although the civil lawsuit had been pending for approximately three months by the time the debtor filed for bankruptcy, he did not reveal this fact anywhere on the relevant schedules, and affirmatively stated that he did not own any property.  See id. at 716-17.  Under those circumstances, the court held that the debtor's civil claim remained the exclusive property of the estate.

In Nielsen v. Dickerson, No. 98 C 5909, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 20, 1999), the debtor received a collection letter, which she alleged violated the FDCPA because it implied the involvement of a law firm that was not, in actuality, meaningfully involved in the collection efforts. Several months after receiving the letter, she filed for Chapter 7 relief.  See id. at *3.  However, none of the schedules to her initial bankruptcy filing referenced a potential FDCPA claim.  See id.  Rather, two months into the proceeding, in a second amended Schedule C, the debtor for the first time disclosed a putative claim against the *law firm*, but not the debt collector.  See id. at *4.  She eventually received a full discharge from the bankruptcy court.  See id.

After the conclusion of the bankruptcy case, the debtor commenced a putative class action under the FDCPA against the law firm *and* the debt collector.  See id. at *5.  However, the debt collector challenged her standing, arguing that the bankruptcy petition had only disclosed a potential claim against the law firm, and therefore, any potential claim against other defendants belonged exclusively to the estate."  Id. at *13.

The court disagreed, rejecting the notion that the debtor had "forfeited her claim against [the debt collector] (or more appropriately, relinquished her rights in that claim to her bankruptcy estate) simply because she failed to identify [the debt collector] in her bankruptcy schedules as a potential defendant in the present action."  Id.  In this regard, the court reasoned that:

> Although we can envision a scenario in which a bankruptcy petitioner manipulates her bankruptcy schedules to "hide," from the trustee or her creditors, a deep-pocketed, potential defendant (resulting in the parties' failure to object to the inclusion of the petitioner's interest in such action as exempt property), such fears are not present here, particularly where [the debtor]'s statutory damages are capped at $1,000.

Id. at *17.

Factually similar, in Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482 (E.D.N.Y. 2013), prior to filing for Chapter 7 bankruptcy, the debtor received an allegedly improper letter from a debt collector. In her bankruptcy petition, she disclosed the putative claim, but only identified the underlying creditor, and not the debt collector who sent the letter, as a potential defendant. See id. at 489 & n.2. When she emerged from bankruptcy, she commenced a putative class action against both the creditor *and* the debt collector. See id. at 485. However, as in Nielsen, the debt collector challenged the debtor's standing due to her failure to identify it as a potential defendant. Id.

Similar to the court in Nielsen, Judge Irizarry found that the debtor's description of her FDCPA claim had "provided sufficient information . . . for the trustee to have been able to make an educated decision not to bring the claims against both Defendants." Id. at 489-90. Specifically:

> Even though the Schedule did not list [the debt collector] as a possible defendant in any FDCPA action, a minimal investigation by the trustee would have revealed that [the debt collector] was a potential defendant in any such action. The trustee would have needed only to take a cursory look at the Collection Letter to see that it was written on [the debt collector]'s letterhead and sent from [the debt collector]'s offices. The trustee then easily could have decided that [the debt collector] was responsible for any alleged FDCPA violations arising out of the Collection Letter.

Id.

In Cusano v. Klein, 264 F.3d 936, 942 (9th Cir. 2001), the bankruptcy court confirmed a Chapter 11 plan, in which the debtor, a musician, disclosed an asset of "unknown" value, identified only as "songrights" for songs written while a member of a famous band. Under the terms of the confirmed plan, the debtor made a payment of approximately $1,500 to retain these rights. See id.

Several years later, the debtor commenced a civil action, in which he asserted multiple theories of tort and contract liability, including claims based on the prepetition musical compositions.  See id.  The district court dismissed these claims, finding that they had not been properly disclosed on his bankruptcy petition and therefore belonged to the estate.  See id. at 943.  Further, to the extent the debtor disclosed "songrights" as an asset, for which he paid $1,500, the court found that the claims had been "vastly undervalued."  Id.

The Ninth Circuit reversed in relevant part, finding that the debtor's duty of disclosure only required him "to be as particular as [was] reasonable under the circumstances."  Id. at 946.  Applying that standard, the court held that his listing of "songrights" was "not so defective that it would forestall a proper investigation of the asset."  Id.  More specifically:

> Although it would have been more helpful for [the debtor] to break down the description further so that it named songs, albums, and dates of and parties to royalty and copyright agreements, the additional detail would not have revealed anything that was otherwise concealed by the description as it was, which provided inquiry notice to affected parties to seek further detail if they required it.  Any undervaluation of the 'songrights' asset does not impair [the debtor]'s interest in it . . .

Id. at 946-47.

More recently, in Lewis v. Portfolio Recovery Assocs., Ltd., No. 15-cv-2412, 2015 U.S. Dist. LEXIS 153943, at *7 (D.N.J. Nov. 12, 2015), a debtor simply wrote "lawsuits" on the relevant portion of his Chapter 7 petition.  When he later sought to maintain an action under the FDCPA based on a prepetition collection letter, the defendant contested standing, arguing that the debtor's disclosure during his bankruptcy proceeding had been below the legal standard.  See id. at *2-*3.

The district court agreed, holding that the debtor's unembellished disclosure of "lawsuits" had been "inadequate to meet the requirements under the Bankruptcy Code."  Id.  Specifically, the court reasoned that the plaintiff had "failed to disclose against whom the lawsuits were directed, or the specific type of claim being asserted . . .  A generic designation of 'lawsuits' is not adequate to notify the Trustee as to who the Trustee should pursue and what causes of action should be

brought."  Id.  Accordingly, the court found that the plaintiff lacked standing to pursue the claim, and dismissed the complaint under Fed. R. Civ. P. 12(b)(1).

With these principles in mind, the Court turns to the parties' substantive contentions.

### 3.     Application –Romeo Lacks Standing to Pursue His FDCPA Claim

Applying the standards outlined above, the Court finds that Romeo lacks standing to prosecute this action.  In the Court's view, the record leads unerringly to the conclusion that Romeo failed to prepare his bankruptcy petition carefully, completely, or accurately, as he was required to do under the Bankruptcy Code.  On the contrary, the record clearly reflects that he engaged in conduct designed to conceal, or at least minimize the likelihood that his assigned bankruptcy trustee would receive proper notice of his claims.

In this regard, the Court notes that Romeo commenced the Texas Action and the Northland Action fully one month into his bankruptcy proceeding, without having initially disclosed either of those claims on his Chapter 7 filing.  Although he eventually amended his schedules – as he was permitted to do – the manner in which he did so was insufficient to satisfy his duty of disclosure.

Initially, Romeo amended the petition *after* the trustee issued a "report of no distribution," advising the bankruptcy court that, based on the inaccurate schedules, Romeo apparently possessed no distributable assets.

More to the point, despite having commenced two actions, one of which was simultaneously pending in this Court, Romeo disclosed only one "Possible Fair Debt Collection Claim," without any supporting details that would assist the trustee in conducting a related investigation.  In this regard, Romeo offers no rational justification for failing to disclose the existence of both of his claims; or for concealing that one of them was active in this District; or for withholding important information that was indisputably available to him and would have allowed the trustee to identify and differentiate between the claims, such as the potential adverse parties to each.  This was done

despite the fact that his attorneys, who represented him in both actions, clearly knew or should have known all of these relevant details.

In their legal memorandum, the Plaintiffs contend that it makes no difference whether Romeo identified one singular claim, or several claims, because under the so-called "Wildcard Exemption" found in 11 U.S.C. § 522(d)(5), he was able to exclude the value of several FDCPA claims from his bankruptcy estate.  In making this argument, the Plaintiffs deem it "patently absurd" to suggest that there was any appreciable consequence to only disclosing one potential claim, instead of a number of claims.  See Pl. Ans. Memo at 11.  The Court disagrees.

Simply stated, the Bankruptcy Code does not authorize debtors to selectively divulge their financial interests.  Far from it: "[a]n individual debtor must 'disclose *all* his interests at the commencement of a case.' " Arana, 456 B.R. at 169 (quoting Chartschlaa, 538 F.3d at 122); see In re Harper, No. 10-7510, 2011 Bankr. LEXIS 295, at *3 ("Debtors cannot pick and choose items for disclosure on their schedules and rely on the trustee to uncover the rest through investigation of public records. The trustee requires complete schedules so as to best protect the interests of the estate and maximize distribution to creditors"); see also In re Cecil, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015) (noting that "the bankruptcy system depends on complete disclosure" and "debtors are not free to pick and choose what to disclose, and what not to disclose"); In re Kim, No. 10-66727, 2011 Bankr. LEXIS 4369, at *19 (Bankr. N.D. Ga. Oct. 26. 2011) (noting that "the debtor has an uncompromising duty to disclose his or her financial information, not to pick and choose or to obfuscate the answers" (internal citation and quotation marks omitted)).

The risk of an incomplete disclosure is apparent in this case.  Indeed, even assuming that the vague and inaccurate reference to a "possible" FDCPA claim succeeded in leading the trustee to investigate Romeo's financial interests; and even assuming that this investigation led the trustee to discover the pending Northland Action, Romeo offers no sensible explanation – and the Court cannot identify any – for how the trustee could then reasonably have been expected to know that a

second claim against FMA also existed, so that the trustee could conduct a proper evaluation of *that* claim on behalf of the estate.   Stated simply, to borrow from the Plaintiffs' legal memorandum, Romeo's schedule plainly failed to give the trustee enough information to identify all of his claims, let alone decide if they were worth pursuing.   <u>See</u> Pl. Surreply at 3 (quoting <u>Furlong</u>, 660 F.3d at 87).

Romeo's "no harm, no foul" approach, in which he argues that his deficient disclosure was inconsequential because he could have simply claimed a Wildcard Exemption for the additional FDCPA claim, misses the point.   A similar situation was presented in <u>Black v. Midland Credit Mgmt.</u>, No. C13-5626, 2013 U.S. Dist. LEXIS 130787, at *7 (W.D. Wa. Sept. 12, 2013), where the debtor argued, as does Romeo, "that even if she did know about [her] FDCPA claim during the bankruptcy proceedings, she would have exempted it from creditors under the Chapter 7 'wild card' exemption . . ."

The court found this reasoning to be unpersuasive, noting that "the integrity of the bankruptcy system depends on [ ] full and honest disclosures by debtors," and therefore, even if the debtor's claim was theoretically eligible for an exemption, she "still had to list the claim as a contingent asset in her schedules."   <u>Id.</u>   The same reasoning applies here.   In fact, in the Court's view, the Plaintiffs' tacit admission that Romeo may have recognized the incompleteness of his disclosure, but rationalized it using the Wildcard Exemption, "is further evidence that [he was] manipulating [his] schedules," to conceal one or both of his claims. <u>In re Price</u>, No. 14-13186, 2015 Bankr. LEXIS 996, at *24 (Bankr. D. Md. Mar. 30, 2015).

Perhaps the most troubling part of this situation is that, unlike the Texas Action, which he discontinued prior to amending his petition, Romeo continued prosecuting the Northland Action *in this Court* throughout his entire Chapter 7 proceeding, without ever disclosing that fact to the trustee, the bankruptcy court, or this Court.   As noted above, Romeo continued litigating the undisclosed Northland Action until well after the conclusion of the bankruptcy case, finally advising

the Court of a settlement just last month.  This was plainly a derogation of his duty to identify all of his legal claims with as much specificity as was reasonable under the circumstances.

In this regard, the Court also takes note of a portion of the Plaintiffs' legal memorandum, in which they concede that the debtor in the Lake case made an "undeniably false statement" in his Chapter 7 petition by indicating that he "intended" to file a civil lawsuit, when, in actuality, he had already commenced one several months earlier.  See Pl. Ans. Memo at 9.  The Court discerns no meaningful difference between those facts and Romeo's conduct in this case.  The Court's records clearly indicate that Romeo – through the same counsel that represents him in this case – commenced both the Texas Action and the Northland Action on June 13, 2015.  Then, approximately nine days later, on June 22, 2015, he amended his bankruptcy petition to describe the *then-pending* Northland Action as a "possible" FDCPA claim, again without disclosing the putative claim against FMA in any way.  Applying the reasoning from Lake, the Court concludes that Romeo's inaccurate characterization of these claims was "deceptive" and "cryptic" – or, using the Plaintiffs' own words, that his disclosure constituted an "undeniably false statement."

In sum, if "[f]ull and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system," Lowery, 398 B.R. at 515, then Romeo's conduct cannot be approved.  Accordingly, his claim against FMA remains the exclusive property of his bankruptcy estate, and he lacks standing to prosecute this action.  The Defendant's motion to dismiss Romeo's complaint under Rule 12(b)(1) is therefore granted.

### 4.      Application – Motz Has Standing to Pursue His FDCPA Claim

The Court reaches a different conclusion with respect to Motz.  Although Motz also attempted to prosecute the Texas Action without initially disclosing it on his petition; and although he, too, waited to amend his petition until after the assigned trustee issued a "report of no distribution," there is no reason to believe that Motz's ultimate disclosure was materially incomplete or inaccurate so as to forestall a proper investigation of his FDCPA claim.

In particular, unlike Romeo, there is no evidence that Motz possessed multiple legal claims at once, or that he attempted to simultaneously prosecute a civil action without advising his Chapter 7 trustee.  Rather, the record reflects that Motz possessed one claim based on the FMA Collection Letters; that he initially pursued that claim in a Texas forum; but that he ultimately discontinued that lawsuit in order to amend his Chapter 7 petition to include the claim.

More importantly, the record reflects that the description used by all of the Plaintiffs – namely, "Possible Fair Debt Collection Claim" – was only actually accurate with respect to Motz. Therefore, in the Court's view, unlike Romeo, Motz's petition did not pose a substantial risk of his trustee being misled about the nature and extent of his contingent assets.  Nor did it prevent the trustee from making an educated decision about the value of Motz's putative claim to the estate.

In reaching this conclusion, the Court does not overlook the fact that Motz's description of his claim, like Romeo's, failed to identify potential adverse parties.  However, because his disclosure was otherwise substantially accurate, this fact does not alter the Court's reasoning.  In particular, as applied to Motz, the description supplied was reasonably particularized in that it clearly identified the relevant statutory authority, which, due to the specialized nature of the FDCPA, itself gave basic notice of the underlying factual scenario, and the maximum possible value of the claim.   In this regard, the Plaintiffs appropriately note that, under such circumstances, the contemplated defendant is, as a practical matter, of little importance because *any* potential defendant could only be held liable for a $1,000 statutory award.  This concern was similarly addressed in Nielsen, where the court noted that FDCPA claims are not, in most instances, susceptible to individual debtors "manipulat[ing] [their] bankruptcy schedules to 'hide,' from the trustee or her creditors, a deep-pocketed, potential defendant" because "statutory damages are capped at $1,000."  Nielsen, 1999 U.S. Dist. LEXIS 8334, at *17.

In any event, because Motz only had a single claim, thereby eliminating the need to assist the trustee in differentiating between multiple causes of action and potential defendants, the Court

is persuaded by cases from within this Circuit that the identity of FMA as the putative defendant was not necessarily required to be disclosed to comply with the Bankruptcy Code. See id. at *13 (debtor did not relinquish her rights in an otherwise properly disclosed FDCPA claim simply by failing to identify a putative defendant in her Chapter 7 schedules); Eun Joo Lee, 926 F. Supp. 2d at 489-90 (same).

To quote from the Cusano opinion: "Although it would have been more helpful for" Motz to identify FMA as the putative defendant, that "additional detail would not have revealed anything that was otherwise concealed by the description as it was." 264 F.3d at 946-47.

Accordingly, because Motz disclosed his claim with enough specificity to place the Chapter 7 trustee on inquiry notice of its full nature and extent; and because this claim was not otherwise administered by the trustee, the Court finds that it reverted back to him at the conclusion of his bankruptcy proceeding. Therefore, Motz has standing to maintain this action, and the Defendant's motion to dismiss his complaint under Rule 12(b)(1) is denied.

**B.      Judicial Estoppel**

Alternatively, the Defendant argues that the doctrine of judicial estoppel should apply to prevent all three Plaintiffs from taking positions in this lawsuit which are inconsistent with positions previously taken in their bankruptcy proceedings. In particular, FMA argues that, by initially omitting their FDCPA claims from their bankruptcy filings, the Plaintiffs took the position in the bankruptcy court that they did not have any valuable contingent assets. According to FMA, the trustees and the bankruptcy court relied on this position by granting Romeo and Motz a discharge, and by confirming Arpino's Chapter 13 plan. Now, says the Defendant, the Plaintiffs are abandoning that position, and taking the materially inconsistent position that they do, in actuality, each have valuable interests in the form of legal claims against debt collectors. FMA contends that this reversal is the type of unfair litigation tactic that the Plaintiffs should be judicially estopped from pursuing.

### 1.    The Standard of Review

The Defendant does not specify what procedural rule it invokes to bring its judicial estoppel argument before the Court.  Although FMA appears to frame the judicial estoppel argument as part of its Rule 12(b)(1) motion, several court have noted that Rule 12(b)(6) is the more appropriate vehicle for doing so.  See, e.g., Thomas v. JP Morgan Chase, N.A., No. 11-cv-3656, 2012 U.S. Dist. LEXIS 96131, at *16 (E.D.N.Y. July 11, 2012) (noting that "[a] defendant may raise an affirmative defense such as judicial estoppel on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where the basis for that defense is established by the materials properly before the Court"); Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006) (same); see also Idearc Media LLC v. Glassman, No. 10-cv-1216, 2011 U.S. Dist. LEXIS 14865, at *6 (E.D. Pa. Feb. 15, 2011) (noting that the defendant had "frame[d] his judicial estoppel argument as part of his 12(b)(1) motion to dismiss for lack of subject matter jurisdiction," however, "[b]ecause judicial estoppel is an affirmative defense that does not attack jurisdiction, his argument [was] more properly considered under Rule 12(b)(6)" (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir, 1978))).

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)."  Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

However, "whether cast as a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), the scope of [the Court's] review is essentially confined to the pleadings, and other undisputed

authentic records and documents." Jackson v. WellSpan Health, No. 13-cv-1349, 2014 U.S. Dist. LEXIS 13458, at *12 (M.D. Pa. Feb. 4, 2014).

> **2.      The  Applicable Legal Principles**

"Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining an unfair advantage through the deliberate adoption of inconsistent positions in successive suits." Wight v. BankAmerica Corp., 219 F.3d 79, 89 (2d Cir. 2000) (citing Bates v. Long Island R.R., 997 F.2d 1028, 1037-38 (2d Cir. 1993)).  To invoke this equitable doctrine, a party must demonstrate that: "(1) his adversary 'advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.' " Id. at 90 (quoting AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996)).

"The doctrine of judicial estoppel requires that there be 'a true inconsistency between the statements in the two proceedings,' " and " '[i]f the statements can be reconciled there is no occasion to apply an estoppel.' " Inok v. SIAC-Sector Inc., No. 05-cv-6584, 2011 U.S. Dist. LEXIS 7312, at *17 (S.D.N.Y. Jan. 27, 2011) (Report and Recommendation), adopted, 2011 U.S. Dist. LEXIS 27301 (S.D.N.Y. Mar. 14, 2011). "In this circuit, moreover, '[w]e further limit judicial estoppel to situations where the risk of inconsistent rulings with its impact on judicial integrity is certain.' " In re Adelphia Recovery Trust, 634 F.3d 678, 696 (2d Cir. 2011) (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010)).  "This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." Id. (citing Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997)).

Relevant here, "many courts in this circuit have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims." Ibok, 2011 U.S. Dist. LEXIS 7312, at *17-*18 (collecting cases); see also Coffaro v. Crespo, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) (observing that "[i]n the bankruptcy context, judicial estoppel is commonly invoked in order 'to prevent a party who failed

to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy' " (quoting <u>Negron v. Weiss</u>, No. 06-cv-1288, 2006 U.S. Dist. LEXIS 69906, at *8 (E.D.N.Y. Sept. 27, 2006))).  " 'The rationale of these decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.' " <u>Ibok</u>, 2011 U.S. Dist. LEXIS 7312, at *19 (quoting <u>Rosenshein v. Kleban</u>, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)).  Specifically, courts have recognized that "[i]t would violate the 'integrity' of the bankruptcy system to 'permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently' assert 'those claims for his own benefit in a separate proceeding.' " <u>Id.</u> at *20 (quoting <u>Rosenshein</u>, 918 F. Supp. at 104).

### 3.      Application – Arpino is Judicially Estopped from Maintaining her Claim

The Defendant's judicial estoppel argument is premised on the theory that all three Defendants took the position in their bankruptcy proceedings that they either did not possess any contingent legal claims, or they significantly undervalued their interest in such claims.

However, having already determined that Romeo lacks standing to survive dismissal under Rule 12(b)(1), the Court need not reach the question of whether he is also judicially estopped from pursuing this action.  Also, having determined that Motz sufficiently disclosed his claim in bankruptcy, his allegations in this case do not constitute a clear departure from a previous position. <u>See</u> <u>Eun Joo Lee</u>, 926 F. Supp. 2d at 490 (after determining that the debtor adequately disclosed a putative legal claim on her bankruptcy petition, the court held that she was "not barred from bringing [an FDCPA action] either on standing or judicial estoppel grounds").  Thus, the Court's consideration of judicial estoppel is limited to its application to Arpino.  As noted above, it appears that judicial estoppel is the only ground upon which FMA seeks to dismiss Arpino's claims.

Applying the standards outlined above, the Court concludes that Arpino, like Romeo, clearly failed to prepare her Chapter 13 petition carefully, completely, or accurately, as she was required under the Bankruptcy Code to do.  Therefore, she is judicially estopped from pursuing a claim for

her own benefit in this action, which she previously concealed from her Chapter 13 trustee, her creditors, and the bankruptcy court.

In this regard, the Court reiterates that, like Romeo and Motz, Arpino commenced a civil action within three weeks of filing for Chapter 13 relief, despite having failed to disclose any such interest in her initial petition. She, too, amended her filing to include one "possible" FDCPA claim – a disclosure that, like Romeo's, was undeniably inaccurate considering that her claim was not merely "possible," it was actualized. Further, similar to Romeo, although Arpino's first action was simultaneously pending, she withheld any supporting details that would assist the trustee in conducting a related investigation.

Then, despite disclosing only a single potential claim worth $1,000, Arpino proceeded to commence *four* additional actions, two of them putative class actions, against four different defendants in four different federal district courts. As noted above, she emerged from bankruptcy on December 21, 2015 without ever having disclosed the existence of these claims. Thus, in the Court's view, it is facially implausible for the Plaintiffs to maintain that they proceeded "open[ly] and honest[ly], and telegraphed exactly what their intentions were." Pl. Ans. Br. at 20. It strains credulity to suggest that by disclosing one "possible" FDCPA claim, Arpino sustained her "uncompromising" burden to fully disclose the complete extent of her contingent assets.

In reaching this conclusion, the Court finds that Arpino's conduct clearly exemplifies the type of "play[ing] fast and loose with the courts" that the equitable doctrine of judicial estoppel was designed to prevent, and which ought not to be rewarded. Wight, 219 F.3d at 89. As to the first element of the standard, it is obvious that the factual position advanced by Arpino in the bankruptcy court – namely, that she possessed one potential FDCPA claim – is irreconcilably different then the position she took almost immediately thereafter by filing, but never disclosing, four discrete lawsuits, bringing the total to five such actions, commenced in less than three months' time.

As to the second element, there can be no question that her inaccurate disclosure in the Chapter 13 proceeding was adopted by the bankruptcy court, which confirmed her proposed repayment plan without ever learning of the true extent of her claims.

Accordingly, as the caselaw outlined above makes clear, judicial estoppel is appropriate in this case to prevent Arpino from asserting claims for her own benefit in this proceeding, which claims she previously concealed in order to obtain relief from the bankruptcy court.  In this Court's view, the risk such conduct poses to the integrity of the bankruptcy system is self-evident.  Thus, the Defendant's motion to dismiss Arpino's complaint on this ground is granted.

## C.       As to Attorneys' Fees and Costs under 15 U.S.C. § 1692k

Finally, the Defendant seeks to recover an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) on the ground that the Plaintiffs commenced this action in bad faith for the primary purpose of harassing FMA.  In support of this request, the Defendant relies solely on a declaration by FMA's General Counsel and Vice President of Compliance Lauren Anne Rosenfeld, which contains statements setting forth FMA's positions on the merits of the Plaintiffs' underlying FDCPA claims.  See Easley Decl., Ex. "R."  Essentially, the Defendant contends that it is entitled to an award of attorneys' fees and costs because, upon receiving notice of this action, Ms. Rosenfeld contacted counsel for the Plaintiffs and advised him of these positions, asserting that the Plaintiffs' allegations lacked merit.  However, despite this warning, the Plaintiffs refused to withdraw the complaint.  See Def. Memo of Law at 20.

In the Court's view, this is an insufficient basis for the drastic relief FMA seeks.  Initially, the present motion was directed exclusively at the Plaintiffs' standing to maintain this action, and did not touch on the merits of the case.  Therefore, at this juncture, there is no apparent basis for granting the Defendant's request, because their position on the merits may not ultimately prevail. In any event, as the Plaintiffs appropriately point out, even if, as the Defendant predicts, the underlying claims turn out to lack merit, "the assertion of the claim [does] not by itself prove bad

faith," <u>Simmons v. Roundup Funding, LLC</u>, 622 F.3d 93, 97 (2d Cir. 2010).  Also, the Court notes that the Defendant has not offered any other evidence to plausibly suggest that this action was brought intentionally to harass FMA.

Accordingly, the Defendant has failed to sustain its burden under 15 U.S.C. § 1692k, and the request for attorneys' fees and costs is denied at this time.

### III.      Conclusion

Based on the foregoing, the Defendant's motion to dismiss the complaint is granted in part and denied in part.

The Court grants the motion to dismiss the complaint under Rule 12(b)(1) with respect to Romeo on the ground that he lacks standing, and thus the Court lacks subject matter jurisdiction over his claims.  The Court also grants the motion to dismiss the complaint with respect to Arpino on the ground that she is barred by principles of judicial estoppel from pursuing her claims.

However, the Court denies the motion to dismiss with respect to Motz.  The Court also denies without prejudice the Defendant's application for an award of attorneys' fees and costs.

Accordingly, the Defendant is directed to file a response to the complaint within 20 days of the date of this Order, and the matter is referred to United States Magistrate Judge Arlene R. Lindsay for discovery.

Finally, the Clerk of the Court is respectfully directed to amend the official caption of this matter as follows:

---------------------------------------------------------------------------------------------------------x
CHRISTOPHER MOTZ, individually and on behalf of all others similarly situated,

                                   Plaintiff,
               -against-

FMA ALLIANCE, LTD.,

                                   Defendant.
---------------------------------------------------------------------------------------------------------x

It is **SO ORDERED.**

Dated:           Central Islip, New York
                 June 30, 2016          _/s/ Arthur D. Spatt_____
                                        ARTHUR D. SPATT
                                        United States District Judge